**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Akram K. Geelani, | : | Case No. 3:13 CV 151 |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Summit Academy Management, | : | **REPORT AND** |
|     Defendant, | : | **RECOMMENDATION** |

### INTRODUCTION

Plaintiff Akram K. Geelani ("Plaintiff") seeks monetary damages, including back pay, compensatory damages, and punitive damages, from his former employer, Defendant Summit Academy Management ("Defendant"), as a result of alleged national origin discrimination (Docket No. 11).  Judge Jack Zouhary's order of March 21, 2013 scheduled  this case for  jury trial on April 8, 2014 (Docket No. 9). Pending is Defendant's Motion for Summary Judgment, filed on October 30, 2013 (Docket No. 13), to which Plaintiff filed an Opposition on December 6, 2013 (Docket No. 17), and Defendant filed its  Reply on December 16, 2013 (Docket No. 18). For the reasons that follow, the Magistrate recommends that Defendant's Motion for Summary Judgment be granted.

1

## BACKGROUND

Born in Egypt, Plaintiff is a naturalized United States citizen of Middle-Eastern ancestry (Docket No. 11, ¶ 8). In August 2005, Plaintiff was hired by Defendant as a therapeutic martial arts instructor in one of Defendant's Toledo schools ("Toledo School") (Docket No. 11, ¶ 11). All of Defendant's schools, including the Toledo School, serve an at-risk student population comprised of students with Attention Deficit Hyperactivity Disorder ("ADHD"), Asperger's Disorder, and High-Functioning Autism (Docket No. 17, Attachment 4). By Plaintiff's own admission, this unique student body requires a martial arts instructor to not only be skilled at his/her craft, but also able to keep the students on task (Docket No. 13, Attachment 2, p. 8 of 26; Docket No. 13, Attachment 3, p. 2 of 3). Plaintiff was employed by Defendant from August 2005 until June 2011 (Docket No. 11 ¶ 11).

Plaintiff's Amended Complaint and Opposition now allege that during his tenure with Defendant, he was repeatedly subjected to discrimination based on his national origin, including a denial of privileges afforded to other teachers, heightened and unwarranted scrutiny, and a general interference with his job (Docket No. 11, ¶¶ 13-26). Specifically, Plaintiff alleges that he was: (1) required to stand during his period of lunch duty, whereas other teachers were allowed to sit; (2) required to attend out of town teacher in-service training days when other martial arts instructors were not; (3) not on the Toledo School's call list to be notified of school delays and closings; (4) not allowed to take home a laptop computer to enter his grades; (5) repeatedly "spied on" by the Toledo School's principle, Johna McClure ("Ms. McClure") for no reason; (6) repeatedly denied the opportunity to show movies during his classes; and (7) prohibited from organizing student performances (Docket No. 17, pp. 2-4 of 12).

2

Beginning in the fall of 2007, Plaintiff's immediate supervisor and Director of Therapeutic Martial Arts and Outdoor Experiential Education Joseph J. Bove ("Mr. Bove") was advised that there were issues with Plaintiff's overall performance at the Toledo School (Docket No. 13, Attachment 3, p. 2 of 3). On August 27, 2007, Ms. McClure issued Plaintiff a written memorandum addressing these issues and their need for correction (Docket No. 19, p. 1 of 2). A year later, in September 2008, Ms. McClure again advised Plaintiff of issues in his classroom and provided him with a plan for immediate improved performance (Docket No. 19, p. 2 of 2). Plaintiff denies knowledge of the 2007 memorandum but admitted receipt of the 2008 professional improvement plan (Docket No. 13, Attachment 2, p. 21 of 26).

Plaintiff was again reprimanded, this time by Mr. Bove, after an April 2011 classroom observation during which Mr. Bove witnessed Plaintiff failing to comply with Defendant's policies and established curriculum (Docket No. 13, Attachment 2, p. 2 of 3). Mr. Bove specifically noted a lack of structure, student interest, and respect for Plaintiff as well as Plaintiff's failure to follow the previously established martial arts curriculum (Docket No. 13, Attachment 3, p. 2 of 3). Mr. Bove notified Plaintiff that he had one month to correct these issues (Docket No. 13, Attachment 3, p. 2 of 3). During a follow-up classroom observation in May 2011, Mr. Bove noted that: (1) the students were not prepared for or interested in spring promotions; (2) the students did not show any respect for the practice of martial arts or Plaintiff; and (3) none of the changes previously discussed had been made (Docket No. 13, Attachment 3, p. 2 of 3). While Plaintiff acknowledges receipt of the written martial arts curriculum, he denies ever being reprimanded for not *following* the curriculum (Docket No. 13, Attachment 2, p. 12 of 26).

3

As a result of Plaintiff's alleged poor performance, Mr. Bove and Ms. McClure chose to look for a new martial arts instructor for the 2011-2012 school year (Docket No. 13, Attachment 3, p. 2 of 3). Plaintiff was informed of their decision on June 27, 2011 (Docket No. 13, Attachment 3, p. 2 of 3; Docket No. 17, Attachment 1, p. 2 of 3). Plaintiff alleges that Ms. McClure and Mr. Bove told him that his contract was not being renewed because Defendant was discontinuing the martial arts program at the Toledo School (Docket No. 11, ¶ 21). However, Plaintiff claims that, on November 19, 2011, he saw an advertisement in the Toledo Blade newspaper seeking a martial arts instructor at the Toledo School (Docket No. 17, Attachment 1, p. 2 of 3). On December 15, 2011, Plaintiff filed a complaint with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") alleging national origin discrimination (Docket No. 11, ¶ 22).[1] He was ultimately issued a "Right to Sue" letter (Docket No. 11, Attachment 1).

## PROCEDURAL HISTORY

Plaintiff filed his Initial Complaint and Jury Demand on January 22, 2013, in the United States District Court, Northern District of Ohio, Western Division naming Summit Academy Management, Summit Academy Community School (Toledo), and Ms. McClure as defendants (Docket No. 1). On May 30, 2013, Plaintiff filed an Amended Complaint and Jury Demand naming only Summit Academy Management as a defendant (Docket No. 11). Defendant submitted its Answer to the Amended Complaint on June 5, 2013 (Docket No. 12). On October 30, 2013, Defendant filed a Motion for Summary Judgment, which is now pending before this

---

[1] It appears that at some point, Plaintiff also made allegations of age discrimination. Those claims were not included in the Amended Complaint and are not now before this Court.

Court (Docket No. 13). Plaintiff filed his Response in Opposition on December 6, 2013 (Docket

No. 17). Defendant filed its Reply on December 16, 2013 (Docket No. 18).

### STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any

material fact and that the movant is entitled to a judgment as a matter of law." FED.R.CIV.P.

56(a). The moving party bears "the initial burden of proving that no genuine issue of material

fact exists." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). The court

must draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* Once

the moving party has met its burden, the burden shifts to the nonmoving party to "set forth

specific facts showing that there is a genuine issue for trial." *Averill v. Gleaner Life Ins. Soc'y*,

626 F.Supp.2d 756, 761 (N.D. Ohio 2009) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986)) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden shifts, Rule 56(e) requires the nonmoving party "go beyond the

[unverified] pleadings" and present some type of concrete evidentiary material in support of its

position. *Averill*, 626 F.Supp.2d at 761 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986)). The nonmoving party "cannot rest on its pleadings or merely reassert its previous

allegations." *Averill*, 626 F.Supp.2d at 761. It is "insufficient 'simply [to] show that there is

some metaphysical doubts as to the material facts.'" *Id.* (*quoting Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In deciding a motion for summary judgment, "the evidence of the non-moving party will

be believed as true, all doubts will be resolved against the non-moving party, all evidence will be

5

construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor." *Averill*, 626 F.Supp.2d at 761 (*citing Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992)). Summary judgment will only be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Averill*, 626 F.Supp.2d at 761 (*citing Celotex,* 477 U.S. at 322); *see also* FED.R.CIV.P. 56(c).

## DISCUSSION

Plaintiff alleges that Defendant intentionally discriminated against him, or knowingly allowed such discrimination to occur, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* (Docket No. 11, ¶ 25). This Act forbids employment discrimination against any individual based on that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). In order to establish a prima facie Title VII claim, a plaintiff must provide either direct or circumstantial evidence of discrimination. *See DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548 (6th Cir. 2004). Here, Plaintiff concedes that he has no direct evidence of discrimination (Docket No. 17, p. 9 of 12).

Without direct evidence, a plaintiff's circumstantial case is subject to the burden-shifting framework set forth in the United States Supreme Court case *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must first establish a prima facie case of discrimination by showing: "(1) that he is a member of a protected group, (2) that he was

6

subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class . . . [or] that similarly situated non-protected employees were treated more favorably." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (*quoting Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)).

Here, it is undisputed that Plaintiff is a member of a protected class and was terminated/ and or subject to an adverse employment action.[2] It is also seemingly undisputed that Plaintiff satisfies his burden at prong four by alleging that he was in fact replaced by an individual outside the protected class even though  Plaintiff alleges that he was replaced by Aaron Brown, an African-American (Docket No. 13, Attachment 2, pp. 17-18 of 26; Docket 17, p. 9 of 12). Defendant does not refute this allegation either in its Motion for Summary Judgment or Reply (Docket Nos. 13 and 18). At this stage, the Magistrate is required to accept all evidence provided by Plaintiff, as the non-moving party, as true. *Averill*, 626 F.Supp.2d at 761. Therefore, the Magistrate finds that Plaintiff meets his burden with regard to prong four.

However, Defendant *does* contest Plaintiff's satisfaction of his burden with regard to prong three. This prong requires a plaintiff to show that he was qualified for his job. *Clayton*, 281 F.3d at 610. To do so, a plaintiff must prove that he was "performing his job at a level which met his employer's legitimate expectations." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (*citing Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir. 1983)). Defendant argues that, given Plaintiff's failure to manage his classroom according to Defendant's standards,

---

[2] It should be noted that Plaintiff was not terminated *during* the duration of his existing contract. Rather, Plaintiff's contract was not *renewed* for the 2011-2012 school year. The Sixth Circuit has held that non-renewal of an employment contract qualifies as an adverse employment action. *Sexstella-Wright v. Sandusky City Sch. Dist.*, 2006 U.S. Dist. LEXIS 88300, *12 (N.D. Ohio 2006) (*citing Jones v. City of Allen Park*, 167 Fed.Appx. 398, 407 (6th Cir. 2006)).

even after being given specific improvement plans, Plaintiff was ultimately not qualified to be the therapeutic martial arts instructor at the Toledo School (Docket No. 17). In response, Plaintiff argues that despite these alleged criticisms and improvement plans, Plaintiff was allowed to do this job for six years, therefore making him qualified (Docket No.17, p. 10 of 12).

Plaintiff himself acknowledges at least two instances where he was notified of his failure to manage his classroom according to Defendant's standards (Docket No. 13, Attachment 2, pp. 12-13, 21 of 26; Docket No. 17, Attachment 1, p. 3 of 3). There is no indication in the record that Plaintiff ever even attempted to correct this behavior. Defendant had a *legitimate* expectation that Plaintiff would abide by Defendant's standards and correct any identified problem areas. Therefore, the Magistrate finds that Plaintiff fails to maintain his burden at prong three. As such, summary judgment is appropriate.

However, even if Plaintiff *were* able to set forth a prima facie case, summary judgment is still appropriate as Plaintiff is unable to maintain a claim for national origin discrimination. Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for [its] action." *Abdulnour v. Campbell Soup Supply Co., LLC*, 464 F.Supp.2d 711, 714 (N.D. Ohio 2006) (*citing DiCarlo*, 358 F.3d at 414). Here, Defendant argues that its reason for not renewing Plaintiff's contract was simple: Plaintiff, after being giving multiple opportunities for improvement, was unable to adequately perform his job according to Defendant's reasonable and legitimate expectations (Docket No. 13, Attachment 1, p. 9 of 14). Plaintiff was hired by Defendant in August 2005 (Docket No. 11, ¶ 11). In August 2007, Plaintiff was notified, in writing, of several problematic issues, including: (1) failure to properly plan personal leave time; (2) allowing students to watch an R-rated movie

8

despite specific orders not to; (3) failure to engage students for at least forty minutes during a forty-five-minute class; and (4) failure to properly structure and monitor students after allowing them to go outside (Docket No. 19, p. 1 of 2). There is no indication that Plaintiff ever corrected these issues.

Plaintiff was issued a similar memo in September 2008 listing various problem areas, including: (1) lack of student respect for the dojo;[3] (2) out of control students; (3) lack of participation by students; (4) lack of Plaintiff's instruction; (5) students given too much unstructured free time; and (6) students not given the instruction they need (Docket No. 19, p. 2 of 2). Given these issues, Ms. McClure advised Plaintiff to immediately: (1) talk to the students and hold them accountable for respecting the dojo; (2) correct students when they fail to give appropriate responses such as "yes sensei" or "ke-ah;" (3) properly conduct tennis according to the prescribed time requirements; (4) engage students in martial arts workouts for at least forty minutes; (5) properly structure any free time; (6)  not allow students who do not participate in the martial arts workout to have free time; and (7) address the students that need assistance, giving them adequate time and attention (Docket No. 19, p. 2 of 2). Again, there is no indication in the record that Plaintiff ever implemented these corrective measures.

In April 2011, Mr. Bove observed Plaintiff and noted: (1) a lack of structure and student interest; (2) Plaintiff's failure to follow the marital arts curriculum; and (3) a lack of student respect for Plaintiff (Docket No. 13, Attachment 3, p. 2 of 3). Plaintiff was given one month to make improvements (Docket No. 13, Attachment 3, p. 2 of 3). When Mr. Bove returned to Plaintiff's classroom in May 2011, he observed that: (1) the students were not prepared for or

---

[3] A dojo refers to a school or practice hall where karate, judo, or other martial arts are taught.

interested in spring promotions; (2) the students still did not show any respect for the dojo or

Plaintiff; and (3) none of the previously discussed issues had been addressed (Docket No. 13,

Attachment 3, p. 2 of 3). The Magistrate finds that these stated reasons are legitimate and

nondiscriminatory grounds for Defendant's adverse employment decision.

Once a defendant articulates a legitimate, nondiscriminatory reason for termination, the

burden shifts back to the plaintiff to show that the defendant's reason was merely a *pretext* for

discrimination. *DiCarlo*, 358 F.3d at 414-15. Pretext can be established by showing that a

defendant's reason: "(1) had no basis in fact; (2) did not actually motivate the decision to

terminate; or (3) was insufficient to warrant the decision to terminate." *Abdulnour*, 464

F.Supp.2d at 715 (*citing Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th

Cir. 1994)). "A plaintiff must do more than simply impugn the legitimacy of the asserted

justification for [the] termination." *Id*. (*quoting Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723,

730 (6th Cir. 1999) (*citing Manzer*, 29 F.3d at 1083)). Furthermore, "the plaintiff must produce

sufficient evidence from which the jury may reasonably reject the employer's explanation." *Id*.

Under the first option, a plaintiff "must show more than a dispute about the underlying

facts. As long as an employer has an honest belief in its proffered nondiscriminatory reason for

discharging an employee, the employee cannot establish that the reason was pretextual simply

because it is ultimately shown to be incorrect." *Abdulnour*, 464 F.Supp.2d at 715-16 (*citing

Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)). In order to

determine whether a defendant has this honest belief, "this Court looks to whether the employer

can establish its reasonable reliance on the particularized facts that were before it at the time the

decision was made." *Abdulnour*, 464 F.Supp.2d at 716 (*citing Braithwaite v. Timken Co.*, 258

10

F.3d 488, 494 (6th Cir. 2001)). "The key inquiry is whether the employer made a reasonably informed and considered decision, and does not require that the employer's decisional process be optimal or leave no stone unturned." *Abdulnour*, 464 F.Supp.2d at 716 (*quoting Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). Ultimately, under this "honest belief" analysis, if a defendant's proffered reason is reasonably informed and considered, the reason survives. *See Abulnour*, 464 F.Supp.2d at 716.

Here, Defendant claims it did not renew Plaintiff's contract for the 2011-2012 school year due to Plaintiff's poor performance (Docket No. 13, Attachment 1). Ms. McClure and Mr. Bove based this decision on Plaintiff's two documented performance improvement plans, both of which had allegedly not been followed, and Mr. Bove's April 2011 observation of Plaintiff's classroom. Plaintiff fails to provide evidence that these complaints were somehow either not made, false, or inaccurate. Although Plaintiff denies receipt of the 2007 memo, he does acknowledge receipt of the 2008 memo and improvement plan as well as a meeting with Mr. Bove where he was told to be "harder on the students" (Docket No. 13, Attachment 2, pp. 12-13, 21 of 26; Docket No. 17, Attachment 1, p. 3 of 3). Therefore, Plaintiff fails to show a lack of honest belief by Defendant that Plaintiff was performing poorly *or* that Defendant somehow failed to be reasonably informed or consider its decision to terminate Plaintiff. As such, this Magistrate finds that Plaintiff fails to establish pretext under the first method.

The second method of proving pretext requires a plaintiff to show that the proffered reason did not actually motivate the decision to terminate/and or the adverse employment deicision. . *Abdulnour*, 464 F.Supp.2d at 717. "To establish pretext under the second *Manzer* method, the plaintiff admits the factual basis underlying the discharge and acknowledges that

11

such conduct *could* motivate the dismissal, but attacks the employer's explanation by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant." *Id.* (*quoting Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (*citing Manzer*, 29 F.3d at 1084) (emphasis in original)). "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Abulnour*, 464 F.Supp.2d at 718 (*quoting Manzer*, 29 F.3d at 1084). Here, Plaintiff would have to show that, *even if* he did perform poorly, it was more likely than not that Defendant failed to renew Plaintiff's employment contract because of an illegal reason, namely, his national origin. Plaintiff fails to do so.

Plaintiff alleges that Ms. McClure and Mr. Bove engaged in a pattern of discrimination that ultimately led to the non-renewal of his contract (Docket No. 13, Attachment 2, p. 6 of 26). In support of his allegation, Plaintiff cites to a number of different "incidents" that allegedly prove such discrimination, including that: (1) Plaintiff was required to stand during his lunch duty, when other teachers were allowed to sit; (2) Plaintiff was forced to go to teacher in-service days when other martial arts instructors were not; (3) Plaintiff was not notified of school delays or closings; (4) Plaintiff was not allowed to take home a laptop computer; (5) Plaintiff was repeatedly "spied on" by Ms. McClure; and (6) Plaintiff was not allowed to schedule student performances (Docket No. 17). After analysis of the evidence contained in the record, this Magistrate finds Plaintiff's allegations to be unsupported by the facts.

During his May 2013 deposition, Plaintiff admitted that he *had* been called regarding school delays and closings until he changed his phone number but was placed back on the list once he updated his contact information with the Toledo School administration (Docket No. 13,

12

Attachment 2, pp. 9-11 of 26). When asked why he thought he was not getting these calls,

Plaintiff admitted "[b]ecause I think probably a mistake" (Docket No. 13, Attachment 2, p. 11 of

26). With regard to the use of a laptop computer, Plaintiff admitted that while the decision

allegedly came from Ms. McClure, he was informed that he could not take home a laptop by the

school secretary (Docket No. 13, Attachment 2, p. 7 of 26). In fact, Plaintiff never spoke directly

to Ms. McClure about the laptop issue (Docket No. 13, Attachment 2, p. 7 of 26). Plaintiff fails

to offer any evidence, aside from his own affidavit, that he was ever specifically told by Ms.

McClure to remain standing during his lunch duty when others were told they could sit. Nor can

Plaintiff confirm that he was required to travel to teacher in-service days as a means of

punishment or discrimination (Docket No. 13, Attachment 2, p. 12 of 26). In fact, Plaintiff is

unable to confirm *any* incident of discrimination, direct or otherwise, by either Ms. McClure or

Mr. Bove:

> Q:     My question to you is did Miss McClure ever make fun of or criticize you
>        because of your accent?
>
> A:     Not direct, sir, but the way –
>
> Q:     Well, how about indirectly?
>
> A:     I don't remember, sir.
>
> Q:     Did Mr. Bove every make fun of you or criticize you, either to you or in your
>        presence, because of your accent?
>
> A:     No, sir, as far as I remember . . .
>
> Q:     Do you think anyone at Summit Academy refused to call you because of your
>        national origin?
>
> A:     I don't know, sir . . .
>
> Q:     Do you believe Miss McClure made you go to those [in-service] meetings to

13

|       |                                                                                 |
|-------|---------------------------------------------------------------------------------|
|       | punish you somehow?                                                             |
| A:    | I don't know, sir.                                                              |
| Q:    | Do you think she required you to go to those meetings to discriminate against you because you were of Egyptian ancestry? |
| A:    | I don't know, sir.                                                              |

(Docket No. 13, Attachment 2, pp. 6, 10, 12 of 26).

Further, Plaintiff admitted that he felt slighted when Ms. Mcclure stopped asking him for his opinion on school-related matters (Docket No. 13, Attachment 2, p. 16 of 26). According to Plaintiff, this was because Ms. McClure did not want Plaintiff looking like the "big hero sensei [he] used to be," *not* because of his national origin (Docket No. 13, Attachment 2, p. 16 of 26). Plaintiff admitted that Ms. McClure might have treated him differently, if at all, because he was not part of her "clique," which Plaintiff also admitted was comprised of teachers from diverse ethnic backgrounds (Docket No. 13, Attachment 2, p. 14 of 26). Finally, and perhaps most importantly, Plaintiff admitted that Ms. McClure never, *in any way*, made derogatory comments concerning Plaintiff's national origin (Docket No. 13, Attachment 2, p. 21 of 26). Plaintiff also conceded that Mr. Bove *never* treated him differently because he was Egyptian and further admitted that he would go back to work for Mr. Bove (Docket No. 13, Attachment 2, pp. 15,17 of 26).

As stated above, once the burden shifts back to the non-moving party, the non-moving party "cannot rest on its pleadings or merely reassert its previous allegations." *Averill*, 626 F.Supp.2d at 761. Rather, the non-moving party must "go beyond the [unverified] pleadings and present some type of *concrete* evidentiary material in support of its position." *Id*. Here, Plaintiff offers no evidence, aside from his own self-serving affidavit, that would suggest the non-renewal

14

of his contract was based on some type of illegal motivation. Therefore, the Magistrate finds that Plaintiff cannot prove pretext under the second method.

The third and final method of showing pretext is to "prove the nondiscriminatory reason was insufficient to warrant the decision to terminate and/or the adverse employment action.  This method usually consists of 'evidence that other parties . . . were not fired even though they engaged in substantially identical conduct.'" *Abdulnour*, 464 F.Supp.2d at 718 (*quoting Manzer*, 29 F.3d at 1084). Plaintiff fails to offer any evidence suggesting that another Toledo School employee who engaged in "substantially identical conduct" was not terminated or subject to an adverse employment action. As such, the Magistrate finds that Plaintiff cannot prove pretext under the third method.

Therefore, this Magistrate finds that Plaintiff fails to establish a prima facie case of discrimination based on national origin. In the alternative, even if Plaintiff *were* able to satisfy his prima facie burden, he is unable to overcome with sufficient evidence Defendant's proffered legitimate and nondiscriminatory explanation for the non-renewal of his contract. As such, the Magistrate finds that Plaintiff's Amended Complaint is without merit and recommends that Defendant's Motion for Summary Judgment be granted in its entirety.

## CONCLUSION

For the foregoing reasons, the Magistrate recommends that Defendant's Motion for

Summary Judgment be granted in its entirety and Plaintiff's Amended Complaint be dismissed.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   February 7, 2014

## IX. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation

attached hereto has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN

DISTRICT OF OHIO, any party may object to the report and recommendations within fourteen (14)

days after being served with a copy thereof. Failure to file a timely objection within the fourteen-

day period shall constitute a waiver of subsequent review, absent a showing of good cause for

such failure. The objecting party shall file the written objections with the Clerk of Court, and

serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the

proposed findings, recommendations, or report to which objection is made and the basis for such

objections. Any party may respond to another party's objections within fourteen days after being

served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v.*

*Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's

report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106

S.Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition

16

the right of appeal on the filing of timely objections to a report and recommendation.